Good morning. May it please the Court, my name is Keith Owens, and I'm here representing the appellant, US Bank et al. I'm here with my colleague Jennifer Nassiri. I will address the merits of the appeal, and Ms. Nassiri will address any issues regarding jurisdiction that the Court may have. The Court issued an order last week, requesting the parties be prepared to discuss jurisdiction, specifically subject matter jurisdiction. I don't know how the panel would like to address it, whether the jurisdictional issue should come first or later. I'll leave that to you. If we don't have jurisdiction, there's not much point in talking about anything else, so why do we have jurisdiction? I will turn that over to my colleague. Thank you. Thank you, Keith. Jennifer Nassiri, also for the appellant. The Court has subject matter jurisdiction because the order on the motion to designate, the order granting the motion to designate by the Bankruptcy Court, was a final order. It decided that a discrete issue raised by the designation motion, namely Mr. Rapkin's insider status, specifically the primary issue on appeal, is a legal one. Whether the Bankruptcy Court correctly held as a matter of law that Mr. Rapkin was an insider, and as a result of his acquisition of an insider claim, and therefore his vote could not be considered to confirm the debtor's cram-down plan. With respect to non-statutory insider discussion and 1126E, all facts are undisputed, and it was an issue of the Bankruptcy Court's application of an erroneous legal standard. Well, just a minute, I guess. If I were to agree with you that the insider claim seems to be a final order, and I'm not sure that in that particular situation facts would control, if I move to the non-insider statutory claim, if the Bankruptcy Court is sending back to have more discovery or whatever about common interest privilege, and we don't even know how that's going to come out, how can I say that the facts are undisputed? It seems to me that if common interest privilege affects at all non-statutory insider status, and I think you have to talk to me about that, then I'm a little worried that it is final. With respect to the non-statutory insider status, the BAP reversed. The facts, we believe there's no further fact-finding necessary with respect to the establishment of a non-statutory insider. All of the facts that Why, then, is it important to decide common interest? Are you suggesting that the BAP's decision about common interest and the reversal of the Bankruptcy Court about common interest privilege and allowing them then to, if you will, question about that common interest privilege and the discussions that that privilege would have forbid questioning about had no relevance to non-statutory insider? It's my understanding that the issue on common interest privilege related to simply whether there was an actual agreement between the parties. Appellant, we cross-appealed on that issue, common interest privilege. We believe it's a tangential issue, not central at all to all of the facts through discovery that have been established in connection with the BAP. Are you abandoning the relief that the BAP gave you in sending that issue back to the Bankruptcy Court? Are you no longer interested in pursuing the information that you might extract? Because otherwise, the question seems to me you're asking it to go back to the Bankruptcy Court for further consideration of the non-statutory insider issue. And if you are, then it doesn't look very final to me. If you're not, and we're just going to drop that issue out of the case and you will accede to the finding that Mr. Rabkin is not an insider, then maybe we have something to talk about there. So if you want to lateral it to your colleague, you may, but I mean, I've got a hard time figuring out what's final about that part of the issue if, in fact, we're still fighting about the common interest privilege. Because the issue of whether or not there was an agreement on the common interest But it doesn't matter if it's conceded that he's not an insider. The whole point of exploring that subject is to explore whether or not he should be disqualified because he's tainted as an insider. And if you're now saying, and so that's why I don't think that issue's teed up yet. We certainly don't have a confirmed plan, so we're well short of that. So what's final here? Well, we might have one discrete legal issue, but the rest of it looks like it's still in flux. We don't believe that it's still in flux with respect to the non-statutory insider. All of the facts that my colleague will talk about in connection with the merits of that, we believe applying the correct standard based on precedence. So you don't care about getting more facts by exploring the common interest privilege. You're not going to try to get more information from them anymore. Is that the case? If you tell me no, then you're telling me you want that issue to go back to the bankruptcy court. That's the reason for my question. I mean, to be fair, I would have suggested you had jurisdiction until I got to this common interest. And then I said, is that irrelevant? If it's irrelevant, then why did the bankruptcy BAP have to reach it? And if it isn't irrelevant, what issue is it going to be relevant to? And if it's going to be irrelevant to non-statutory insider, then there's no way that I'll have a final decision about that because we don't know what will come up. Well, the final decision on issue number one specifically is dispositive of the case. If the bankruptcy – Well, issue number one is, are they a statutory insider? Based on the general law of assignment that he was assigned an insider claim. But the second question is, is he a non-statutory insider? Correct. And I believe that we would be prepared to stand on the facts. The common interest privilege was a benefit – But you don't care about going back to the bankruptcy court. That was a benefit to us to explore further. Exactly. And I'm asking you, do you care about going back to the bankruptcy court? No. Are you now willing to say that issue is off the table? That issue will be off the table because we believe the remaining issues are discrete issues that were finally decided. Thank you. Do you want to hear more on the jurisdictional issues? Well, we now know what your position is, so if your colleague wants to spend any time talking about the issue he thinks it is before the court, we better turn the podium over to him. Very briefly, the common interest privilege, we believe that the vacation or vacating and remanding that issue solely on the agreement itself, that the bankruptcy court got it wrong. There is no common interest privilege. Are you pursuing that issue? No. It's over. Then don't tell me about it. We are taking this as being a statement that issue is dropped out of the case. Fair enough. You've abandoned the request, the part of the relief you've gotten from BAP on that issue. Fair enough. So I'm going to get to the merits of the appeal. What we believe to be the most important and dispositive issue here is the general law of assignments. The bankruptcy court found that under the general law of assignments, citing a number of cases, including Hawley-Knoll, including a case called Applegate, including a case called Heights Band Corporation, and an unpublished decision by the Ninth Circuit, a case called Interreg Career Limited Partnership, that under the general law of assignments, which applies in bankruptcy, the ASINEE stands in the shoes of the ASINOR and retains all of the rights and disabilities that the original claimant had prior to the assignment. So as a matter of law, when that claim was assigned to the ASINEE, the ASINEE stood in the shoes of the ASINOR, and the disability that was inherited was the insider status. Why should that be true in a case where the sale doesn't have any of the other questionable elements this does? Suppose there's something that would be considered a bona fide, uninterested party acquisition of some interest. Why should it continue to carry the taint? Well, those are separate issues completely, Your Honor. The issue of there's the legal issue as a matter of law. The legal issue, as I understand it, is whether the taint goes automatically. That's correct. And so that's the issue that's clearly here before us. And you're saying, as a matter of State assignment law, that taint, the fact that the interest was previously held by somebody deemed to be an insider, is irrevocable. You can't lose that taint. That's correct, Your Honor. And I'm saying, well, what about a case that doesn't have the other suspicious elements here, where, in fact, it's an entirely disinterested third party who, for real value, acquires an interest? Why should the taint go with that interest? Well, as the Greer West Court had said, if that's the case in Siding Heights Ban Corporation, any creditor, any debtor in a single-asset real estate case that cannot confirm a plan over the objection of a secure creditor, and we're talking about a two-party dispute here. Really, there was only one creditor that existed as of the date of the bankruptcy filing. It was the appellant. The insider claim that was admitted could not be considered for voting purposes prior to the assignment. What changes the dynamics? Is it simply by assigning the claim to a friend or somebody that's romantically involved with the insider? See, you're giving me the other taints again. Suppose it's a disinterested party. I mean, the bankruptcy code provides for cram downs. So you may have one creditor, one secured creditor here, but if there were another creditor out there for whatever reason, that bankruptcy code opens the door at least to consideration of a plan. So my question is, okay, here you've got all these suspicious circumstances, but suppose you don't have that. Why is the taint permanent? Why can't somebody who is a disinterested third party acquire an interest and then proceed on his own behalf after that? That's a good question, Your Honor, and the taint is permanent because the general law of assignments is recognized in bankruptcy. Congress could have recognized it. Congress certainly knew that the general law of assignments applied when it enacted the bankruptcy code. This court, in a case called Enroy Boyajian, dealt with a very similar issue. And that was an issue of whether a non-dischargeability complaint, whether a fraud claim was non-dischargeable in the hands of the assignee, because the assignee himself did not reasonably rely on the fraud or misrepresentation. The assignor did. I didn't mean to interrupt you. I didn't know you had a little more to say. Go ahead if you've got more to say about that. Frankly, I'm surprised you're going there because it seems to me, and maybe you're going there because you think the standard of review is easier. But it seems to me the things you're really arguing about here are not whether the assignment really does it, but whether it's in bad faith. We are arguing bad faith as well, Your Honor. Well, I think it's all bad faith. I mean, bad faith, I understand the determination of good faith or bad faith really puts you in a hole. Because there, it's clearly erroneous. Once the district courts made that determination, then you're stuck unless you can say they did something which was out of it. Which the BAP also suggested. They were kind of bound. They didn't suggest that they necessarily agreed with a good judge, but they said bad faith or good faith is really discretionary and we're going to go with it. It's clear error. And it seems to me that's what you're arguing. Because I can't find anything to suggest that this taint, if you will, goes with the claim at all. Well, I will address bad faith very briefly, but I want to make one point. And that is in the Greer West case, which again was a Ninth Circuit unpublished decision, not precedential. It was exactly on all fours, Your Honor. Exactly on all fours. You had an insider claim, a non-insider claim that was assigned to, or excuse me, the other way around. An insider claim that was assigned to a third party and the court held that that claim, the insider status followed the claim. There's no difference between the court's analysis in that case, the court's analysis in Heights Band Corporation where the court opined as to what could happen, the parade of horribles if you have this, that this cannot be permitted. It wasn't a bad faith analysis. But with respect to bad faith, yes, Your Honor, we do believe that there was bad faith. This is a two-party dispute. This is a claim that was acquired for $5,000. It's the tail wagging the dog. It was acquired only days before the disclosure statement hearing. All of those facts were clearly in front of the bankruptcy judge, plus all of the other factors, the bankruptcy judge knowing about what's happening in the case, knowing all the parties, being able to see it, and the bankruptcy judge says, there's no bad faith here. We believe that the judge got it wrong both on a legal basis as well as a factual basis. Well, I don't know the legal basis. Well. What case suggests he was wrong?  Do you think Fichter is the same as this case? I think that Fichter has language in there that is. There's a lot of spouting goes on up here about language that can be what it is. But I don't even think it's the same case. Yeah, there's language in there. We say a lot of dicta. But the bottom line is, district judges and bankruptcy judges determining discretionary decisions, especially in a trial court basis, are capable of giving a lot of deference. And this is a trial court basis. This bankruptcy judge is hearing the evidence, making a decision, and now I'm supposed to say on high, reading between the lines, you got it wrong. Well, Your Honor, the record is completely complete. And we believe that the court, if it's not a legal analysis, that the court certainly, it was a clear error. When you consider all the factors, we do not believe that the court considered or went through all the factors. It was a complete, clear error that you have a two-party dispute where the only vote, the only claim is a claim that didn't even exist before the bankruptcy or could be voted. And it was acknowledged in the record by the insider that that claim was worthless to the insider. But yet it was transferred to a friend, a very friendly person, a close friend in a romantic relationship.  That purpose was to confirm a crime down bond. This is not like in Fichter where it said that the badge of fraud or badge of bad faith is when you have a pre-existing creditor that purchases claims to protect its own interest. That would be acceptable. Fichter recognizes that. But Fichter also recognizes that when you have somebody that's not a pre-existing creditor that's buying claims so it can foster a plan or block a plan, that is a badge that's bad faith. That's certainly a badge of bad faith. This is an end run around the bankruptcy code. And it's both illegally erroneous for that reason because it conflicts with the bankruptcy code itself. By allowing this to happen, and I know I'm merging the issues of automatic assignment, non-statutory we haven't even gotten to yet, and then bad faith. But certainly bad faith, there is bad faith all over this case. And it's particularly in a single asset real estate case where there's no other creditor in existence. And you have a $5,000 claim that's wagging the dog. It's a tail wagging the dog. In that instance, that was clear error. If the Court does not believe that the Fichter analysis applies, there's no other conclusion to draw, that it's clear error. The record's complete. You don't have to remand back to the bankruptcy court. And that's on that issue. Well, we don't have to remand at all. Correct. The BAP didn't. That's correct, Your Honor. For the BAP to follow the exact reasoning that I'm following, there's no remand about that. And you've waived the other issue. So there's nothing left to talk about on that. Well, and we believe that the BAP got it wrong and the bankruptcy court got it wrong. I understand. The non-statutory insider status, the Court really applied too narrow of a standard. The Court only listed a few factors. The Court did not go through the arm's length nature of the transaction. The Court did not look at the totality of those circumstances, all the facts. The nature of Mr. Rapkin not even knowing what his return would be in the documents, not knowing whether the claim had been filed. When you add all of that up, and that goes to both non-statutory insider as well as bad faith, you add all of that up, there's simply no way to draw a conclusion. I understand that the BAP affirmed the bankruptcy court on that issue. But the Court misapplied that standard. It was far too narrow of a standard. And I'd be happy to address. I know I've gone way over the time. Gone way over the time. That'll do for now. Thank you, Your Honor. Thank you. Good morning, Honorable Judges. Alan Smith, representing the Appalachian Lake Ridge Village. And I guess I probably could have saved quite a few hours yesterday had I known the position of my opponent. I mean, it was my position that the jurors didn't have the right to decide   Thank you. Thank you, Your Honor. Thank you. the remand issue. When I received the order from the Court, I didn't know exactly what it was. I thought it was either that or Girard. And had I known that it was abandoned by the other side, I wouldn't have I don't know that they knew it was abandoned until about 10 minutes ago. Could be right, Your Honor. But it was my position that Well, let's take the case as it is now. Sure. Your position is that there is jurisdiction. Yes, Your Honor. My position would have been had they taken the position that it was not abandoned, that they had waived it. Clearly, the opportunity to remand and go back to the bankruptcy court was solely for the benefit of U.S. Bank. For them to get additional evidence, supposedly, that would have supported their position that under the Pacific Pictures case, that there wasn't a specific agreement to pursue a common strategy. And not taking advantage of that, I think they basically are stuck with the facts as they sit today. There are no more facts. The facts are the way they are. And the remand cannot be resurrected. And that was going to be my position today, had they not abandoned it. I didn't know if also I mean, this is I agree with the opposing counsel that this is the appeal of a designation motion or designation motion, so it is final. I didn't know if this Court was concerned about the Bullard case. I looked at this as distinct from the Bullard case. In Bullard, it was a Chapter 13 case and the court the bankruptcy court denied confirmation of the plan. Of course, ultimately, the U.S. Supreme Court said, well, it's not final because the debtor could propose another plan. In this case, there's only one plan that can be proposed and it depends upon the vote of Mr. Rabkin who was assigned the claim. So I didn't feel that this Well, there are potential issues with regard to the plan. But I think the source of our concern has probably been taken care of because at least we have something that's final to deal with. Okay. So maybe it's worthwhile moving to the merits. I will. And maybe you can tell me how this is an economically legitimate transaction. I'm not sure. Well, let me just start first with, you know, I think the starting point for me is looking at Mr. Rabkin. Is he, in fact, a non-insider? And I know that there's been a lot of talk about bad faith and such, but I think this court and Your Honor has it correct that the standard of review is clear error. And they suggest that the bankruptcy court looked at the wrong standards  And as I read their brief, I don't see anything in their brief, any cases that say that the bankruptcy court didn't look at something. Well, one factor could be the factor that the bankruptcy court thought was conclusive, which the BAP said otherwise. That is, the fact that the acquisition came from somebody who was an insider. Because the bankruptcy court treated that discreetly, it didn't appear to factor that in as to one of the issues as to possible bad faith. Well, I'll get to that. I'm trying to do it, you know, step by step. I mean, as to the factual issue of whether Mr. Rabkin was an insider, the bankruptcy court clearly found that he was not. And my position is the court properly applied the law. And my question is, that transaction, what was economically legitimate about it? It was a purchase by a friend. I won't try to get into the details of the relationship, but there's not a denial that there was a personal relationship there. By a friend with no visible, discernible negotiation, due diligence. He was willing to spend $5,000 because that was chump change to him. No effort to keep tabs on what was going on. No sign that the seller was trying to shop its interest to anybody else. This looks like it has no reason for existing, but for the possibility of setting up another creditor class for the purpose of approving a bankruptcy plan. How is that not bad faith? So I'm going to skip the fact and assume that for the purposes of going forward, that statutorily Mr. Rabkin is a non-insider. I don't say that's off the table, but you started talking about the clear air standards, which apply there. The other is a legal question. This is clear air. It seems to me it may be clear air. Well, the other issue is was the transaction legitimate, which of course was analyzed by the judge in connection with the bad faith issue. And I'm still waiting to find out why. There doesn't seem to be any serious economic motivation on either side of the transaction except that it permits a plan of reorganization to be put forward. Well, except for the testimony of Mr. Rabkin, it says that he bought it for a profit. Sure. He bought it to make money. Could it have been transferred to somebody for zero value? I mean, he has nothing of value unless a plan is confirmed. So it's obvious that his economic interest is to vote in favor of the plan. Oh, I agree. Totally. Yeah. And I don't have a problem with that. I think that there's two. Well, I don't think you may not, but I think your colleagues across the room might. Well, I think there's two separate issues, and I tried to keep it separate. One is, as a matter of law, does the insider status transfer with the claim? And that's been their position, and that's, I think, one of the central points in this case. Well, that's sort of the legal issue. Is the taint permanent? Right. Is the taint permanent? And I'm happy to talk about that, but you seem to be getting to the clear air standard, which has to be the broader factual inquiry. Right. And that, I think, is the court found that it was not in bad faith. It was a legitimate transaction. And I'm asking why, because it doesn't seem to be an economically motivated transaction on either side. Well, I mean, money was paid. A claim was transferred. The Bankruptcy Code allows for claims to be transferred. It does not specify how much to be paid. And the court analyzed, the Bankruptcy Court analyzed all these facts, and that's a factual issue. Well, is there any chance this transaction wouldn't have taken place but for the possible impact on the plan of reorganization? It's possible? Well, I think it's probably stipulated that the answer is zero. There was no chance this would have happened otherwise. Now, that may not be a necessary trait. Well, that may not be true, only because there are people always out there looking to make an investment and make money. But what did the seller do to see if it could get a better price for it? Did the seller do anything to shop it to anybody else? I'm not sure that that is required. I mean, I don't know. Didn't ask whether it was required. I just asked is there any evidence that something happened? And if the answer is that there isn't, then it looks like, well, then this really isn't an economic transaction. It's something trying to accomplish something in Bankruptcy Court. At least on the seller's side, that seems to be unquestionable. I understand that. Okay. So let's go to the buyer's side. Okay. What did the buyer do to investigate whether he could get a better price, whether this was a good investment, the likelihood of getting a return on this investment? What did he do to stay in touch with the bankruptcy proceeding? The answer seems to be nothing. He did little, not a lot. If I gave him a call and said I had a bridge to sell for $5,000, do you think he'd buy it? A bridge that might pay off $50,000? I don't know. I don't know that I can compare the two, Your Honor. I mean, I think that that certainly took a risk, like all investors do. And the judge analyzed, the Bankruptcy Court analyzed the transaction and made detailed, specific findings about the transaction and found that it was in good faith. And I think that factual issue should not be revisited by this Court. Well, now, stop. I mean, there's a clear air standard. I understand it's deferential. It is not that once a judge has spoken, that's it. I understand that. But there are factual determinations all the time. Sure, sure. So I understand. You could find that. So I need to hear something that supports the conclusion that this was a legitimate economic transaction. And that's the question I posed about five minutes ago, and I still really haven't heard much on that subject. Yeah. Well, all I can say is what's in the record, Your Honor, that Mr. Rapkin paid $5,000 for a claim that expected to make money on the transaction. And the level of due diligence he did was low. That's true. But I don't think there's a requirement that he do any great deal of due diligence. And there's nothing inherently wrong with that transaction. Obviously, there could be bad faith. If there was some finding, say, for example, that there was an agreement between Mr. Rapkin and the debtor as to, you know, buy this claim and we'll make sure you get, we'll get the plan confirmed and you get repaid. That's not in the record. All that's in the record is that Mr. Rapkin bought a claim that he did conduct minimal due diligence, but the bankruptcy court found it was a legitimate transaction. There's no specific case law saying what level of due diligence anyone has to do. Some claims are bought and sold all the time. Some people do a lot of due diligence. Some people don't. But I don't think that means that the claim is bad. And I think to connect the dots and say, because he bought this claim, it is inherently bad faith. I think goes too far. Well, the BAP made their decision based on two things. One, they said in the record we could see that he bought a claim for $5,000 with a $30,000 expected gain. Right. And the second is he was never asked to vote in favor of the plan. Correct. Is that enough? That's the only thing the BAP could find. That's frankly what my colleague is asking you. Right. Those are the only two things the BAP could say was enough to sustain this bad faith claim. That is not bad faith. Right. Enough to sustain what the bankruptcy court did. They said bought a $5,000 claim with a $30,000 expected gain. And two, he was never asked to vote in favor of the plan. Because there are cases that suggest that if you solicit it with a favor how you're going to vote, then it's going to be bad faith. None of those existed here. Right. Is that enough? That's the question. I guess what we'd be looking for is something that might indicate bad faith. Now, Judge Beasley made extensive rulings about the relationship and the circumstances surrounding this transaction and what occurred. And in none of those rulings did he indicate that there was any bad faith or any malintent or anything like ulterior motive, like, for example, that would exist in the Fichter case. So I sort of maybe turn it around and say, okay, is that enough to prove that he's in good faith? Well, I think, you know, it should be the other way around. I mean, was this transaction in bad faith, as U.S. Bank has asserted? And the bankruptcy court found it wasn't and analyzed numerous factors in doing so. So that's why I say, as a factual matter, it's... Does the seller, does MVP's motivation play any role in our evaluation? Their motivation? They stated their motivation on the record. Which was? Which was that the claim was of no value to them and there were reasons to sell it, including tax reasons. And... Did they make an effort to sell it to anybody else? That's not in the record. Did they ever make an effort to get a better price? That's not in the record. Could they have simply given it over to somebody else? Well, I think what we're dancing around now is where does it become bad faith? And if they give it away to somebody else... Let's speak to that. What I'm struggling with is the notion here, and this is what our non-binding decision in Greer talks about, that this appears to be simply a device to open up a door within bankruptcy that wouldn't exist otherwise. And are you supposed to be able to do that? I think that's where the difference is. But I think inherently... I mean, you look at the code and you say, okay, an insider is defined, a claim is defined. 1129 says you need to have the vote by a non-insider. And claims can clearly be transferred. And there's nothing that... I don't have time to go through all the cases, but I think they're all consistent. There's nothing that says that the claim is imprinted with an insider status, depending on who holds it. So then you get to the second issue, which always the court has to look at. Is this just a game being played? And that's what I'm trying to focus on. The bankruptcy code sets up this requirement that to have the plan put forth, you've got to have this class that says yes. And the bankruptcy code cuts out the insiders. So the debtor, the insiders of the debtor, can't do it by themselves. They have to have somebody else on the sidelines chairing. And it seems to me anomalous to say, but it's okay to set up your own person on the sidelines chairing and giving approval if you can't do it yourself. That's simply an end around the requirement that somebody outside, presumably disinterested, thinks that this plan's a good idea. Well, I'm taking your question hypothetically because I think factually the bankruptcy court found that it was in good faith. But assuming that we go the clear error route and this court looks at it anew, then the court looks at the big picture. And, for example, in FIGTER, is there an ulterior motive here? Is the plan inconsistent with the bankruptcy code? Is the plan in bad faith? Did the parties behave badly? Did they do something wrong? And I think the answer to all those questions is no. I mean, this plan was consistent with the bankruptcy code. And that's where this court, any court looking at it, has the overview. You can't just willy-nilly go around throwing claims around to get a plan confirmed. But if it's found to be in good faith, the transfer was found to be fair and legitimate, and if it's found that the plan is consistent with the code and satisfies the provisions of the code, I think it's okay. Just like FIGTER, look at it on a case-by-case basis. In FIGTER, it said, you know, the creditor can buy a claim as long as it's consistent with their position. But it can't do something that's inconsistent with bankruptcy code, like try and put somebody out of business. We don't have anything like that. We don't have any ulterior motive. So I think if we look at this even from the clear error standard, this satisfies all the requirements and the goals and purposes of the bankruptcy code were served. Oh, I thought I was out of time. You are. I'm over time. Thank you. One minute, but I've got a trap door that you may disappear if it goes more than one minute. We did take much of your time on jurisdiction, which your colleague didn't have to deal with because of where we are, so. Thank you, Your Honor. Well, I do want to focus on bad faith. I think there's a huge difference. This makes a huge difference that it's a two-party dispute here. If we're going to apply a clear error standard, but for the assignment, the plan is not confirmable. That is conceded. It was conceded by MBP that the plan could not be confirmed, but for the assignment. It was worth nothing to them. So in Fichter, the court said you have to look at the data of practical human experience. What is that? If you don't have a preexisting creditor with a legitimate interest in reorganization, you just have an accommodation to a friend, that's not a legitimate reorganization purpose. There's no basis for the claim other than to help a friend. There's no basis for that assignment. I do want to call it. That's a great argument, but it seems to me that the bankruptcy court considered that issue directly. I think the court did, but then. That's the bottom line. We're here on clear error. Give me the issue the bankruptcy court did not consider. Well, I think the court did. I think the bankruptcy court considered every bit of evidence that was in the record. They may have come out differently than I would. In fact, I'm having a tough time figuring out if I really follow that they're where they are. But this is clear error review. Well, even if it's clear error review, we do believe that this is a clear case of clear error. Well, I know you believe it, but you make an argument. But every bit of evidence in this record was taken by the court and was determined why it ruled the way it did about that. I understand, Your Honor, but the court did not look at some of the case law that was cited. The court did not address the case law. There's no case law that I found that absolutely controlled how it should decide in a bad faith situation. Well, the case law, for example, Bearcat is a case that we cited. Is that the best case? I don't think there's any case that suggests that what the district court did here is illegal. Well, there is a case that is pretty close, and it's a case called Enroy Franklin Mortgage. All of that, again, this is a discretionary call for clear error. One court might come out one way, one might come out another. That doesn't make it precedent. I think that's right, but I don't think you just give blind deference to the bankruptcy court's ruling. And I do think that you have to look, the record's pretty complete. And if you look at the record, the court did not list and consider all factors, the most important of which is that in this particular case, limited to these particular facts, the claim could never have been voted because of an insider claim. It is a complete end run around the bankruptcy code, and the court didn't even address that in the bad faith analysis. I have other issues, but I know the panel, I'm done. But you're not going to be able to talk about them. And the trapdoor is open. Thank you. We thank all counsel for your helpful comments in this complicated case. The case just argued is submitted.
judges: Lasnik, Clifton, Smith